<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| KEVIN CARTER, | : | Civil Action No. 14-4741 (RMB) |
| Plaintiff, | : | |
| | : | **<u>MEMORANDUM OPINION AND ORDER</u>** |
| v. | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants. | : | |

**BUMB**, District Judge:

On July 31, 2014, the Clerk docketed Plaintiff's civil complaint ("Complaint"). <u>See</u> Docket Entry No. 1.  The Complaint arrived unaccompanied by the filing fee or Plaintiff's application to prosecute this matter <u>in forma pauperis</u>.  <u>See id.</u>

On August 4, 2014, noting that the Clerk would not file a civil complaint unless the person pays the entire filing fee in advance or applies for and is granted <u>in forma pauperis</u> status pursuant to 28 U.S.C. § 1915, this Court denied Plaintiff <u>in forma pauperis</u> status without prejudice.  <u>See</u> Docket Entry No. 2, at 1-3 (citing 28 U.S.C. § 1915(a)(2) and Local Civil R. 5.1(f), and explaining that, "[i]f a prisoner seeks permission to file a civil rights complaint <u>in forma pauperis</u>, the Prison Litigation Reform Act . . . , Pub. L. No. 104-134, §§ 801-810, 110 Stat.

1321-66 to 1321-77 (April 26, 1996), requires the prisoner to file an affidavit of poverty and, in addition, *a certified prison account statement* for the six-month period immediately preceding the filing of the complaint") (emphasis supplied).[1]

On August 27, 2014, Plaintiff submitted his affidavit of poverty. See Docket Entry no. 3, at 1-3. However, instead of his certified prison account statement, he submitted his record of deposits from October 2, 2013, to August 6, 2014. See id. at 4. Such record of deposits does not comply with § 1915(a)(2) requirement and, in addition, raises substantial concerns as to Plaintiff's suitability to proceed in this matter as a pauper.

Specifically, the record shows that Plaintiff has had monthly employment wages varying from $176 to $296 and, in addition, monthly wire transfers varying from $25 to $175, for a total monthly income varying from $217 to $404, which has yielded, during the ten-month period from October 2, 2013, to August 6, 2014, a gross total of $1,587. See id.

The grant of in forma pauperis status is trusted to the good faith discretion of the federal judiciary. Reflecting on the

---

[1] The entire fee to be paid in a civil suit is $400. That fee includes a filing fee of $350 plus an administrative fee of $50, for a total of $400. A prisoner who is granted in forma pauperis status will, instead, be assessed a filing fee of $350 and will not be responsible for the $50 administrative fee. If in forma pauperis is denied, the prisoner must pay the full $400, including the $350 filing fee and the $50 administrative fee, before the complaint will be filed.

same, the Supreme Court clarified that one need not be *absolutely destitute* to qualify for in forma pauperis status.  See Adkins v. E. I. DuPont De Nemours & Co., Inc., 335 U.S. 331.[2]  Here, Plaintiff "is an inmate whose living expenses, including housing, food, clothing, medications, etc. are provided by the prison authorities and, thus, it does not appear that his minimal needs would be left unsatisfied unless he utilizes his funds."  Capalbo v. Hollingsworth, 2013 U.S. Dist. LEXIS 178255, at *7 (D.N.J. Dec. 19, 2013).  Correcpondingly, it does not appear that prepayment of the filing fee, especially if that payment is about one-fourth of his ten-month gross total, would be too burdensome for Plaintiff within the meaning of the Adkins test.  However, recognizing that this Court has not been presented with Plaintiff's full account statement (and mindful of the Court of

---

[2] In Adkins, the plaintiff filed a timely motion in district court requesting leave to appeal the district court's decision and stated, in her affidavit, that she was a widow of 74 years of age, that the estimated cost of her record on appeal was $ 4,000, that all she owned was a house inherited from her husband which had been appraised at a value of $ 3,450, and her only source of income was a small rent from the parts of her home without which income she would not be able to purchase even the barest necessities of life, such as food.  The district and appellate courts refused to grant the plaintiff in forma pauperis status because she had not mortgaged her home to raise money toward her litigation, ruling that the plaintiff had to contribute her last dollar to the cost of litigating her suit.  The Supreme Court reversed and ruled that a plaintiff need not be "absolutely destitute" before allowing to proceed in forma pauperis; rather the plaintiff has to establish to the satisfaction of the district court's good faith discretion that the payment of the fee would be unduly burdensome in light of the minimal necessities of life unique to that particular plaintiff.

Appeals' observation that "[i]nmates must pay for access to additional products and services, unless they qualify as indigent [e.g.,] inmates must purchase items such as soap, deodorant, toothpaste, and over-the-counter medications [and they] are also responsible for medical co-pays and the cost of access to legal services"), the Court will allow Plaintiff an opportunity to submit his certified prison account statement, as required by § 1915(a)(2), in order to demonstrate that he qualifies as a pauper within the meaning of Adkins.  Thus, this Court will again deny Plaintiff in forma pauperis status without prejudice and will reserve its final determination until Plaintiff submits his certified prison account statement.

In conjunction with the foregoing, the Court will also allow Plaintiff an opportunity to submit an amended pleading clarifying the ambiguities and curing the deficiencies of his Complaint.[3] Here, Plaintiff asserted that, on January 1, 2012, when he was confined at the FCI Fairton ("Fairton"), a certain inmate utilized Fairton's microwave oven to heat up a mix of coffee, oil and certain chemicals, and then: (a) splashed Plaintiff's face and shoulders with that mixture, injuring Plaintiff's skin and

---

[3] This Court's conclusive screening of Plaintiff's claims is reserved until he duly prepays his filing fee or properly obtains in forma pauperis status.  See Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013) (the court's final determination as to a litigant's claims is inappropriate until and unless the filing fee/in forma pauperis issue has been conclusively resolved).

eyes; and (b) "struck [P]laintiff in the head with a lock in a sock."  Docket Entry No. 1.

Plaintiff named, as Defendants in this matter, the following: (a) the United States of America; (b) the person who served as the Fairton warden six years prior to the alleged incident; (c) the current warden of Fairton; (d) the regional director of the Bureau of Prisons ("BOP") responsible for the oversight of federal correctional facilities located within the North-Eastern part of the United States; and (e) unidentified regional directors of the BOP overseeing federal correctional facilities located within other regions of the United States. See id. at 2-3.  Plaintiff's allegations against all natural persons made it clear that his claims against them were based solely and exclusively on these Defendants' current/past supervisory positions.  See id.

The Complaint, albeit exceedingly lengthy, arrived undated, see id. at 1 and 43, but the content of the exhibits Plaintiff included in his Complaint indicates that he executed it after May 15, 2014.[4]  See id. at 27 (an exhibit executed on that date). Plaintiff's allegations are three-fold.  See, generally, Docket Entry No. 1.  On the one hand, he raised challenges against the United States, pursuant to the Federal Tort Claims Act ("FTCA"),

---

[4] The Clerk received the Complaint on July 29, 2014.  See Docket Entry No. 1.

28 U.S.C. § 1346(b).  On the other hand, he raised <u>Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics</u>, 403 U.S. 388 (1971), claims against those Defendants who are natural persons. One of these <u>Bivens</u> claims asserted failure to protect Plaintiff from the above-mentioned assault with the heated mixture and "a lock in a sock," while another <u>Bivens</u> claim conceded that, after the assault, Plaintiff was availed to "a" medical treatment for his eyes and skin, but alleged that he was not afforded the best medical treatment among the recommended options.  <u>See</u>, <u>generally</u>, Docket Entry No. 1.

With regard to his FTCA claim, Plaintiff alleged that, on October 24, 2013, he had filed a claim with the Regional Office of the BOP and had that claim denied on January 24, 2014.  <u>See</u> <u>id.</u> at 4-5, 35-36 (referring to a certain "exhibit D," which is, allegedly, was the Regional Office's response).[5]  In contrast, there is no statement in the Complaint suggesting, even vaguely, that Plaintiff had exhausted his <u>Bivens</u> challenges.[6]  <u>See</u>,

---

[5] If, in fact, the Regional Office actually responded to Plaintiff's FTCA claim, he has exhausted that claim.  <u>See</u> 28 C.F.R. §§ 14.2(a), 14.9(a).  The Court's record, however, contains no "exhibit D," and the Clerk's re-review of the record (conducted upon this Court's express directive to perform such a search) has conclusively established that no "exhibit D" was ever received from Plaintiff.  Thus, Plaintiff's references to the not-submitted "exhibit D" have rendered Plaintiff's allegation (that he duly exhausted his FTCA claim) ambiguous.

[6] Exhaustion for the <u>Bivens</u> purposes differs from that required under the FTCA, since a <u>Bivens</u> exhaustion requires completion of the BOP's Administrative Remedy Program.  The BOP

6

generally, Docket Entry No. 1. Thus, both <u>Bivens</u> claims appear deficient. <u>See</u> <u>Ahmed v. Dragovich</u>, 297 F.3d 201, 209 & n.9 (3d Cir. 2002) (exhaustion must be completed before suit is filed).

In addition to the aforesaid exhaustion concerns, either both or one of Plaintiff's <u>Bivens</u> claims appear untimely, and his FTCA claim also raises timeliness-based jurisdictional concerns.

For the purposes of his FTCA claim, this Court cannot assume jurisdiction unless the final agency disposition was within six months of Plaintiff's presentment of his claim to this Court. <u>See</u> 28 U.S.C. § 2675(a); <u>see also</u> <u>White-Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 457 (3d Cir. 2010). Here, Plaintiff maintains (relying on the alleged "exhibit D") that his claim was denied on January 24, 2014. Hence, unless it is established that

---

Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. <u>See</u> 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel [representing the warden])" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the warden signed the response. <u>See</u> 28 C.F.R. § 542.15(a). The inmate may appeal to the Central Office on a BP-11 form within 30 days of the day the Regional Director signed the response. <u>See</u> <u>id.</u> Appeal to the Central Office is the final administrative appeal. <u>See</u> <u>id.</u> If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

his Complaint was submitted to his prison officials for mailing to this Court on July 23, 2014, see Houston v. Lack, 487 U.S. 266, 276 (1988) (prisoners' mailbox rule), his FTCA claim is untimely, and this Court is without jurisdiction to entertain it.

Additionally, Plaintiff's Bivens claims based on the events that took place more than two years prior to the date of his submission of the Complaint to his prison officials for mailing to this Court would be untimely (unless he establishes a valid basis for equitable tolling).  Federal courts look to state law to determine the limitations period for § 1983 *and* Bivens actions.  See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); see also Owens v. Okure, 488 U.S. 235, 250 (1989); Wilson v. Garcia, 471 U.S. 261, 280 (1985); O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006) (New Jersey personal injury statute of limitations applies to the claims raised under § 1983 or under Bivens); Little v. Lycoming County, 912 F. Supp. 809, 814 (M.D. Pa. 1996) (same); accord Houston v. Thomas, 2014 U.S. Dist. LEXIS 111294, at *2 (M.D. Pa. Aug. 12, 2014) (citing Roman v. Townsend, 48 F. Supp. 2d 100, 104 (D.P.R. 1999), for the observation that "state statutes of limitations should be borrowed for suits under Bivens").  Accordingly, New Jersey's two-year limitations period for personal injury actions, N.J. Stat. Ann., § 2A.14-2, governs Plaintiff"s claim.  See Montgomery v. DeSimone, 159 F.3d 120, 126, n.4 (3d Cir. 1998); Cito v. Bridgewater Twp. Police Dep't,

892 F.2d 23, 25 (3d Cir. 1989) (under § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action).[7]

Here, Plaintiff's <u>Bivens</u> claims based on the alleged assault accrued on January 1, 2012, that is, more than two years prior to his submission of the Complaint.  Therefore, these allegations appear facially untimely; moreover, his allegations based on the

---

[7] Although the statute of limitations is an affirmative defense that the defendants generally must plead and prove, <u>see</u> <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978), and a plaintiff is not required to plead that the claim has been brought within the statute of limitations, the Supreme Court observed, in <u>Jones v. Bock</u>, that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  549 U.S. 199, 215 (2007); <u>see</u> <u>also</u> <u>Ray v. Kertes</u>, 285 F.3d 287, 297 (3d Cir. 2002).  Moreover, in the event a litigant aims to establish a basis for tolling, it is the litigant's burden to make the requisite showing.  New Jersey law permits equitable tolling where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defectively pleading or in the wrong forum.  <u>See</u> <u>Freeman v. State</u>, 347 N.J. Super. 11, 31 (N.J. Super. Ct. App. Div. 2002) (citations omitted).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  <u>Id.</u>  Here, Plaintiff's exhibits incorporated into his Complaint show that he has been constantly engaged in numerous written exchanges with many individuals during the time when his period of limitations kept running.  Thus, there appears to be no basis to conclude that he was prevented from asserting his rights "in some extraordinary way."

alleged denial of best medical treatment among the options recommended appear analogously untimely.[8]

In addition to raising exhaustion and timeliness concerns, Plaintiff's Bivens allegations are deficient for being based solely on the natural Defendants' supervisory positions (some of which were held many years prior to the alleged events), since such allegations establish that these Defendants had no personal involvement in the alleged wrongs, i.e., either in the asserted failure to protect claim or in the asserted denial of medical care claim.

It has been long established that claims based solely on the theory of respondeat superior are facially deficient. See Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991); accord Solan v. Ranck, 326 F. App'x 97, 100-01 (3d Cir. 2009) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on

---

[8] Since the Clerk received the Complaint on July 29, 2014, and contains an exhibit dated May 15, 2014, Plaintiff could not have submitted his Complaint for mailing to this Court prior to May 16, 2014, or after July 28, 2014.  His period of limitations as to the assault (that allegedly took place on January 1, 2012) expired on December 31, 2013, i.e., five and a half months prior to May 15, 2014, thus rendering that claim facially untimely. Analogously, Plaintiff's claims challenging the medical treatment he was provided are necessarily untimely as to, the very least, the treatments that might have been denied prior to May 15, 2014.

the operation of respondeat superior"), cert. denied, 558 U.S. 884 (2009).[9]

In addition to the foregoing, Plaintiff's allegations appear substantively meritless.  Plaintiff's FTCA claim that Fairton officials were negligent in failing to protect him from the alleged assault in the hands of another inmate is barred by the "discretionary function" exception to the FTCA's waiver of sovereign immunity.

---

[9] Plaintiff's references to: (a) prison regulations aiming to eliminate microwave ovens in prison facilities; and/or to (b) the wardens' use of taxpayers' funds for purchases of microwave ovens, cannot cure the core deficiency of Plaintiff's claims against Defendants named in their supervisory capacities.  This is so because a violation of a prison regulation cannot amount to a wrong of constitutional magnitude within the meaning of Bivens. See, e.g., Ware v. Jackson County, 150 F.3d 873, 882 (8th Cir. 1998) (citing Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997), for the observation that "[v]iolation of an internal prison regulation does not by itself give rise to an Eighth Amendment claim," and Falls v. Nesbitt, 966 F.2d 375, 379-80 (8th Cir. 1992), which rejected the argument that a prison official's violation of an internal regulation is tantamount to a violation of the Eighth Amendment); Broadhead v. Canty, 2013 U.S. Dist. LEXIS 136367, at *11 (M.D. Ala. Sept. 24, 2013) (citing Magluta v. Samples, 375 1269, 1279 n.7 (11th Cir. 2004) ("procedural requirements set out in an administrative regulation are not themselves constitutional mandates"); Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) ("Failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation"); Caruth v. Pinkney, 683 F.2d 1044, 1052 (7th Cir. 1982) ("The failure of correctional officials to comply with directives of a prison regulation 'does not amount to a violation of constitutional magnitude'") (brackets omitted).  Analogously, Plaintiff is without standing to raise challenges based on the alleged misuse of taxpayers' funds.  See Thomas v. Johnson, 2014 U.S. Dist. LEXIS 74396, at *26-27 (D.N.J. May 30, 2014) (citing Green v. Corzine, 2011 U.S. Dist. LEXIS 17173, at * 4 (D.N.J. Feb. 22, 2011).

> While the BOP's conduct at issue is governed by a federal statute requiring the BOP to provide for the "protection" and "safekeeping" of inmates, see 18 U.S.C. § 4042(a)(2), the statute leaves the implementation of these duties to BOP officials' discretion.  See Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000); Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) (explaining that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception"). Furthermore, a judgment as to the best way to protect prisoners from attack by others "is of the kind that the discretionary function exception was designed to shield."  Mitchell, 225 F.3d at 363; see also Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (prison officials have discretionary power over the safety of the institutions they operate).  Indeed, courts have regularly held that federal prisoners' FTCA claims for injuries caused by fellow inmates are barred by the discretionary function exception.  See Cohen, 151 F.3d at 1340-45; Calderon v. United States, 123 F.3d 947, 950-51 (7th Cir. 1997).  Accordingly, the [inmate's] FTCA claim alleging negligence in failing to protect him [is barred].

Thrower, 528 F. App'x 108, at *6-8.

Plaintiff's failure-to-protect claim raised under Bivens also appears substantively deficient.  While it is true that "[b]eing violently assaulted in prison is . . . not part of the penalty that criminal offenders pay for their offenses against society," Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks and citation omitted), "not 'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety."  Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 834).  "To state a claim for damages

12

against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Id. (citing Farmer, 511 U.S. at 834, and Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

> "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol [v. Whetzel,] 256 F.3d [120,] 125 [(3d Cir. 2001)]. It is not sufficient that the official should have known of the risk. Id. at 133. A plaintiff [must] prove an official's actual knowledge of a substantial risk to his safety . . . .

Bistrian, 696 F.3d at 367-69 ("[plaintiff] plausibly alleges that certain prison officials actually knew that he faced an excessive risk of harm by being placed in the SHU recreation yard [with the inmates who assaulted him] because he repeatedly advised (both verbally and in writing) [the prison officials] . . . of the multiple threats [those particular inmates made to him]"); see also Miller v. Ricci, 2011 U.S. Dist. LEXIS 46009, at *28 (D.N.J. Apr. 28, 2011) ("To plead an Eighth Amendment failure to protect claim a plaintiff must plead facts raising a plausible inference of . . . the defendants' deliberate indifference to that particular risk of harm").

Here, the Complaint merely alleges that the BOP officials, nation-wide, knew or should have known that some inmates, also nation-wide, have sometimes used microwave ovens to heat up liquids in order to assault other inmates with those hot liquids. Such allegations are insufficient to show deliberate indifference since nothing in the Complaint indicates that Fairton officials were aware of the risk of harm to Plaintiff in the hands of the particular inmate who assaulted Plaintiff or of that inmate's plans to assault Plaintiff by using a mix of liquids heated in a microwave oven.[10]

Finally, Plaintiff's allegations based on the alleged denial of the best medical care option among those recommended also appear deficient. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those incarcerated and, thus, dictates that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction

---

[10] Plaintiff's statement that his offender also hit him with "a lock in a sock" exemplifies the deficiency of Plaintiff's position. While the inmates, nation-wide, are provided with lockers and locks, and furnished garments and underwear, including socks, the prison officials are not expected to take away all inmates' lockers and locks. See Shrader v. White, 761 F.2d 975, 982 (4th Cir. 1985) ("the stark reality of prison life is that virtually anything can be employed as a weapon, e.g., a pencil can become a dagger; an electric cord a garrote, a lock inside a sock a bludgeon; human excretion a poison. Pool cues, brooms, and chairs have all been used as weapons at one time or another").

proscribed by the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). "A prison official acts with deliberate indifference to an inmate's serious medical needs when 'he knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.'" Natale v. Camden Cty Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); accord Ordonez v. Yost, 289 F. App'x 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if *necessary* medical treatment is delayed for non-medical reasons") (emphasis supplied); Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993) (facts plausibly showing a denial of *prescribed* medical treatment or a denial of *reasonable* requests for treatment that results in suffering or risk of injury state a viable claim).

In contrast, allegations as to inconsistencies/differences in medical diagnoses, short delays unaccompanied by arbitrary or

15

unduly burdensome bureaucratic procedures, refusals to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction, or refusals to provide non-mandatory care that the inmate qualifies as "best" do not amount to cruel and unusual punishment.  See Maqbool, 2012 U.S. Dist. LEXIS 81895; accord Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. 2011) (allegations that the inmate was provided with medical care, but the care was "inadequate" fails to state a cognizable claim); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *37 (D.N.J. June 26, 2006) ("while Plaintiff appears to be of opinion that he was sentenced to imprisonment so the BOP would keep performing full medical examinations of Plaintiff 'from head to toe' and to have a doctor at Plaintiff's disposal around the clock in order to detect every current and future Plaintiff's medical need and provide Plaintiff with every treatment Plaintiff may wish for or fancy, the Eighth Amendment does not envision such a right") (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992), for the observation that "[s]ociety does not expect that prisoners will have unqualified access to health care").

 Here, Plaintiff's Complaint does not indicate that he was denied medical care for his injuries.  Rather, the Complaint suggests that a certain medical practitioner recommended, rather than prescribed, certain treatments, and those treatments have

been either delayed or denied, or medically substituted for alternative treatments.  However, such allegations suggest, at most, negligence rather than deliberate indifference and, thus, appear not actionable.

In sum, Plaintiff's FTCA claim raises exhaustion and timeliness concerns and, in addition, appears to be barred substantively, while Plaintiff's Bivens claims are raised against the individuals having no personal involvement in the alleged events, and those allegations appear untimely, unexhausted and substantively meritless.  Hence, in the event Plaintiff elects to litigate this matter, he will be directed to submit, together with his certified account statement, his amended pleading detailing the exact facts of his claims and clarifying both the timeliness and the exhaustion aspect of each line of his challenges.[11]

IT IS, therefore, on this **5th** day of **September 2014**,

**ORDERED** that the Clerk shall reopen this matter by making a new and separate entry on the docket reading, "CIVIL CASE REOPENED"; and it is further

**ORDERED** that Plaintiff's application to proceed in this matter in forma pauperis is denied without prejudice; and it is further

---

[11]  In addition, Plaintiff will be directed to identify the appropriate defendants for the purposes of his Bivens challenges.

17

**ORDERED** that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED," without filing the Complaint and without assessing a filing fee; and it is further

**ORDERED** that administrative termination is not a final dismissal on the merits, see Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265 (3d Cir. 2013) ("administrative closings are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, [might] remain moribund"); and it is further

**ORDERED** that Plaintiff may have this matter reopened if, within thirty days of the date of the entry of this Order, he either pre-pays his $400.00 filing fee or submits his certified six-month prison account statement; and it is further

**ORDERED** that, in the event Plaintiff pre-pays his filing fee or submits his certified prison account statement, he shall accompany his payment/submission by an amended pleading detailing the timeliness, exhaustion and factual predicate of each of his claims in light of the guidance provided to him in this Memorandum Opinion and Order, and naming appropriate defendants; and it is further

**ORDERED** that no statement in this Memorandum Opinion and Order shall be construed as withdrawal of this Court's jurisdiction over this matter.  This Court expressly retains its

18

jurisdiction over this matter for the period of ninety days, subject to extension, if the future developments in this matter warrant so; and it is further

**ORDERED** that, in the event Plaintiff fails to pre-pay his filing fee and does not submit his certified prison account statement, or if he fails to submit his amended pleading in accordance with the terms of this Memorandum Opinion and Order, Plaintiff's claims will be deemed withdrawn without prejudice to being raised in a new and separate matter, and this matter will be deemed conclusively closed without further notice to Plaintiff, with this Court's jurisdiction over this matter deemed withdrawn; and it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by certified mail, return receipt requested, and shall enclose in said mailing a blank civil complaint form.

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**