**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| KEVIN CARTER, | : | |
| | : | Civil Action No. 14-4741(RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Defendant. | : | |

APPEARANCES:

SALVATORE J. SICILIANO
Siciliano & Associates, LLC
16 South Haddon Avenue
P.O. Box 25
Haddonfield, NJ 08033
  On behalf of Plaintiff

CHRISTOPHER D. AMORE
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, Suite 700
Newark, New Jersey 07102
  On behalf of Defendant

  This matter comes before the Court upon the Defendant's Motion to Dismiss the [Amended] Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 38) and Defendant's brief in support ("Def's Brief,") ECF No. 38-2; Plaintiffs' brief in opposition to Defendants' motion to dismiss ("Pls' Brief," ECF No. 39);

Defendants' reply brief ("Defs' Reply", ECF No. 40); and Plaintiff's sur-reply. ("Pl's Sur-reply," ECF No. 41.) For the reasons discussed below, the Court will grant Defendant's motion to dismiss.

I. BACKGROUND

Plaintiff was incarcerated at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton") from September 27, 2011 to September 1, 2016, at which time he was transferred to a Residential Re-entry Center. (Declaration of Ondreya Barksdale ("Barksdale Decl."), ECF No. 38-4, ¶4; Attach. B, ECF No. 38-5.) His projected release date was March 2, 2017, assuming he received all good conduct time available to him pursuant to 18 U.S.C. § 3624(b). (Barksdale Decl., ¶5, Attach. A, ECF No. 38-6).

On July 24, 2013, Plaintiff filed an administrative tort claim with the Bureau of Prisons seeking $3,000,000 for injuries sustained as a result of an assault he suffered in federal prison on January 1, 2012. (Barksdale Decl., ¶11; Attach. D., ECF No. 38-8.) On January 24, 2014, the BOP denied Plaintiff's administrative claim. (Barksdale Decl. ¶12, Attach. E, ECF No. 38-9.)

On July 29, 2014, Plaintiff filed the present civil rights action, arising out of the assault on him in FCI Fairton on January 1, 2012, when an inmate splashed Plaintiff in the face

2

and shoulder with a "super heated [] homemade concoction of scalding hot coffee, oil, and cleaning chemicals mixed together," and then hit Plaintiff in the head with a lock in a sock. (Compl., ECF No. 1 at 8.) Plaintiff filed an amended complaint on October 21, 2014, alleging a single cause of action under the Federal Tort Claims Act against the United States of America. (Am. Compl., ECF No. 7, ¶26.)

Plaintiff described his negligence claim as "failure to use reasonable care in preventing the unreasonable risk of scalding assaults caused by hot liquids super heated in easily [accessible] microwaves." (Id., ¶5.) Plaintiff alleged:

> As a direct result of defendants [sic] negligence in exercising ordinary diligence in there [sic] duty to keep plaintiff safe from unreasonable risk of harm and there [sic] failure to adhere to the "Zimmer Amendment" plaintiff suffered serious physical injuries in the form of second degree burns to his face and right shoulder as well as nerve damage to the right side of his facial area.

(Id., ¶25.) Plaintiff alleges Defendant was negligent by not adhering to the Zimmer Amendment, 18 U.S.C. § [4042], which serves as a "functional ban" on microwaves in prison. (Id., ¶19.) He further alleges that Warden J.T. Shartle was aware of the risk to inmate safety caused by inmate access to microwaves because Shartle, in his previous employment at FCI Elkton, had

banned microwaves after an inmate on inmate assault involving a liquid heated in a microwave. (Id., ¶¶9-10.)

Plaintiff was appointed pro bono counsel on June 3, 2016. (Letter, ECF No. 23.) On December 5, 2016, Defendant filed a motion to dismiss for lack of jurisdiction. (Def's Mot. to Dismiss, ECF No. 38.) Defendant contends Plaintiff's FTCA claim is barred by the discretionary function exception to the FTCA. (Def's Brief, ECF No. 38-2 at 10-20.)

II. DISCUSSION

A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a party may assert a defense of lack of jurisdiction by making a motion before filing a responsive pleading. A motion under Fed. R. Civ. P. 12(b)(1) is an appropriate vehicle for a defendant to challenge the Court's jurisdiction over a claim under the Federal Tort Claims Act, based on the discretionary function exception. See e.g., S.R.P. ex rel. Abunabba v. U.S., 676 F.3d 329 (3d Cir. 2012). The Government has the burden of proving the applicability of the discretionary function exception. Id. at 333.

In addressing a Rule 12(b)(1) motion, a "district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" Hedges v. U.S., 404 F.3d 744, 750 (3d

4

Cir. 2005) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "When a Rule 12(b)(1) motion is evaluated as a "factual attack" on the Court's subject matter jurisdiction, 'the court may consider evidence outside the pleadings' in evaluating that attack." United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co., 839 F.3d 242, 251 (3d Cir. 2016) (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).

B. The Discretionary Function Exception to the FTCA

The United States has sovereign immunity against suit, unless it consents to be sued. United States v. Testan, 424 U.S. 392, 399 (1976)). "The terms of [the Federal Government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." Id.; F.D.I.C. v. Meyers, 510 U.S. 471, 475 (1994) ("sovereign immunity is jurisdictional in nature"). Thus, absent a waiver of sovereign immunity, a district court lacks subject matter jurisdiction over claims against the Federal Government. See e.g., White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir. 2010) (noting courts should not extend the waiver of sovereign immunity beyond what Congress intended.)

The FTCA is a limited waiver of sovereign immunity. 28 U.S.C. § 1346(b); White-Squire, 592 F.3d at 456. The Federal Government's consent to be sued under the FTCA is limited by the

"discretionary function exception." U.S. v. Gaubert, 499 U.S. 315, 322 (1991). 28 U.S.C. § 2680(a) provides that the waiver of sovereign immunity under the FTCA "shall not apply to":

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The legislative purpose of this exception is to "prevent judicial second-guessing [by tort action] of legislative and administrative decisions grounded in social, economic, and political policy". Gaubert, 499 U.S. at 323 (citation omitted).

"[B]efore determining whether the discretionary function exception applies, a court must identify the conduct at issue." S.R.P. ex rel. Abunabba, 676 F.3d at 332 (citing Merando v. U.S., 517 F.3d 160, 165 (3d Cir. 2008)). Next, a court must conduct a two-part test for determining if the contested conduct falls within the exception. Gaubert, 499 U.S. at 322.

The first step is to determine whether the challenged conduct involved an element of judgment or choice. Id. Conduct does not involve judgment or choice "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no

6

rightful option but to adhere to the directive." Id. (quoting Berkovitz by Berkovitz v. U.S., 486 U.S. 531, 536 (1988)).

If the challenged conduct involves an element of judgment, the second step for the court is to determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 322-23. "[T]he exception 'protects only governmental actions and decisions based on considerations of public policy.'" Id. at 323 (quoting Berkovitz, 486 U.S. at 537.) The Court explained:

> For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

Id. at 324-25. Thus, a government employee may be negligent in exercising his discretion, but the challenged conduct may still fall within the discretionary function exception if the employee's actions are susceptible to policy analysis. See Merando, 517 F.3d at 172 (finding National Park Service's decision to implement and execute an inspection program for hazardous trees is susceptible to policy analysis.)

C. The Parties' Arguments

Defendant contends that there is no statute, regulation, policy, or rule that either precludes or requires the BOP to make microwave ovens accessible to inmates. (Declaration of John T. Shartle ("Shartle Decl.") ECF No. 38-3, ¶6). The BOP's Trust Fund Policy allows prison trust fund profits to be expended on inmate service items, including "inmate-use" microwave ovens. (Shartle Decl., ECF No. 38-3, ¶7; Attach. F, ECF No. 38-10 at 19-20.)

The warden determines the policy involving inmate use of the microwave ovens. (Shartle Decl., ¶8). At the time of Plaintiff's injury, microwave ovens were available to the inmates in FCI Fairton's general population housing units. (Id., ¶9). The purpose of making microwaves available for inmate use is to provide inmates with an alternative or supplement to the meals provided by the BOP, which are governed by a "National Menu," and which cannot be changed at the local level. (Id., ¶¶10-11.) Inmates may purchase food from the commissary and heat it in the inmate-use ovens. (Id., ¶¶9, 11.)

Inmates are subject to disciplinary action if they heat liquids in an inmate-use microwave oven to injure another inmate. (Id., ¶12.) The available reports show that Plaintiff's incident was the only incident involving the misuse of microwave ovens that occurred while Shartle was the Warden at FCI Fairton. (Id., ¶13.) Shartle determined that the benefits of providing

8

inmate-use microwave ovens to the general inmate population outweighed the negative consequences of possible misuse. (Id., ¶14.)

Defendant relies on several cases in support of application of the discretionary function exception under the circumstances presented here. (Def's Brief, ECF No. 38-2 at 15-16.) In Fields v. United States, No. 5:11-cv-8-Oc-29PRL, 2013 WL 4779229 (M.D. Fla. Sept. 5, 2013), a plaintiff prisoner claimed the BOP was "negligent because they provided microwaves for inmates to use." Id. The court rejected this argument, finding that "such a claim falls under the discretionary function exception" to the FTCA. Id. at *6.

Defendant contends that the Third Circuit, in Graham v. United States, No. 97-1590, 2002 WL 188573 (E.D. Pa. Feb. 05, 2002), aff'd without opinion, 47 F. App'x 198 (Table) (3d Cir. 2002), upheld the application of the discretionary function exception in analogous circumstances, where a prison official allowed inmates access to items easily converted into weapons. (Def's Brief, ECF No. 38-2 at 16-17.) Similarly, the First Circuit found that the discretionary function exception applied to the BOP's decision to allow an inmate to work as a kitchen orderly, providing him with access to a potentially dangerous sweeping brush. Santana-Rosa v. United States, 335 F.3d 39 (1st Cir. 2003). (Id. at 17-18.)

Defendant asserts that because Warden Shartle's decision to make microwave ovens accessible to BOP inmates involved an element of judgment and choice, it satisfies the first element of a discretionary function analysis. (Id. at 19.) The second step of the Gaubert test is met, Defendant claims, because it takes into consideration the health and welfare of inmates, providing inmates with alternatives to meals prepared by the BOP, and budgetary concerns. (Def's Brief, ECF No. 38-2 at 19.)

Defendant argues that the Zimmer Amendment, relied on by Plaintiff, and formally known as the "No Frills Prison Act" is inapposite to the application of the discretionary function exception. (Id. at 20-21.) Defendant submits that the No Frills Prison Act amended the Violent Crime Control and Law Enforcement Act of 1994 (the "Act") and provides, in part, that none of the appropriated funds made available by the Act "shall be used to provide [inmates with] . . . possession of in-cell coffee pots, hot plates, or heating elements." (Id. at 20, quoting Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 611, 110 Stat. 1321 (Apr. 26, 1996)).

The Zimmer Amendment "was primarily aimed at reducing or eliminating public funding for perceived 'prison frills.'" (Id. at 20, quoting Jewell v. Gonzales, 420 F. Supp. 2d 406, 421 (W.D. Pa. 2006.)) In 1995, Representative Dick Zimmer, the sponsor of the Amendment, stated on the floor of the House:

10

"[T]his amendment deals with prison amenities. Prison perks are bad public policy and a waste of taxpayer dollars. My amendment is designed to start eliminating them from Federal Prison." (Id. at 20-21, quoting 141 Cong. Rec. H7751-16 01.)) The microwave ovens that are accessible to the inmate population at FCI Fairton are located in the general population housing units, and are not in-cell heating elements barred by the "Zimmer Amendment." (Def's Brief, ECF No. 38-2 at 21.) Accordingly, Defendant argues this legislation provides no support for Plaintiff's claims. (Id.)

Defendant further argues that the discretionary function exception is applicable here because Congress has charged the BOP with a broad statutory duty to "provide suitable quarters and provide for the safekeeping [and] protection . . . of all persons charged with or convicted of offenses against the United States." (Def's Brief, ECF No. 38-2 at 22, citing 18 U.S.C. § 4042.) Yet, the manner in which the BOP exercises its statutory duty is discretionary. (Id., quoting Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997) ([Section 4042] "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.") Defendant concludes that the broad discretion afforded the BOP under this statute satisfies the first prong of the discretionary function exemption analysis. (Id. at 22.)

11

Defendant asserts that the type of decision and judgment involved here, safeguarding federal inmates, is grounded in the sort of policy decisions that the discretionary function exception was designed to cover, thus meeting the second prong of the Gaubert test. (Id. at 22-23.)

In opposition, Plaintiff contends that all authorities cited by Defendant are distinguishable, and public policy favors letting the complaint proceed. (Pl's Brief, ECF No. 39 at 4.) Plaintiff distinguishes Fields, 2013 WL 4779229 (M.D. Fla. 2013), because the court placed weight on the fact that there was no history of attacks with heated liquids or chemicals at the prison. (Id. at 6-7.) Plaintiff pled that Warden Shartle had reason to know of the danger of attacks presented by inmate use of microwaves from his experience at FCI Elkton. (Id. at 7.) Thus, Plaintiff contends the court should provide less deference to the warden under the circumstances in this case. (Id.) Plaintiff distinguishes Graham, 2002 WL 188573 for the same reason, that there was a factual dispute as to whether there had been similar attacks in the past. (Id.)

Furthermore, Plaintiff asserts that even if the Zimmer Amendment does not apply to microwaves purchased with BOP Trust Fund profits or microwaves placed in housing units, the fact that microwaves were prohibited in some circumstances by the legislature supports the proposition that the prison may have

12

been negligent in providing them. (Pl's Brief, ECF No. 39 at 8.) At the very least, the Zimmer Amendment shows a legislative determination that microwaves should not be accessible to inmates. (Id.) The existence of the Zimmer Amendment and Warden Shartle's decision to provide the microwaves in Fairton should be properly considered by the court. (Id.)

In reply, Defendant asserts that even if the warden had knowledge of the possibility that inmates would use microwave ovens to heat liquid to assault other inmates, the discretionary function exception still applies because there is no "federal statute, regulation, or policy specifically prescrib[ing] a course of action for an employee to follow"). (Def's Reply, ECF No. 40 at 2, quoting Cestonaro v. United States, 211 F. 3d 749, 753 (3d Cir. 2000)).

Plaintiff responds that the BOP has interpreted the Zimmer Amendment as an outright ban of certain items; thus, the conduct at issue here does not involve judgment. (Pl's Sur-reply, ECF No. 41 at 2, citing Amatel v. Reno, 156 F.3d 192, 194 n.1 (D.C. Cir. 1998) (in prison when the government absolutely monopolizes the means of speech or controls a bottleneck . . . a refusal to fund functions the same as an outright ban."); Kimberlin v. U.S. Dep't of Justice, 31 F. 3d 228, 232 (D.C. Cir. 2003) (BOP'S interpretation of Zimmer Amendment as imposing an outright ban of electrical instruments was reasonable).

13

C.  Analysis

First, this Court must determine the conduct at issue. S.R.P. ex rel. Abunabba, 676 F.3d at 332 (citing Merando v. U.S., 517 F.3d 160, 165 (3d Cir. 2008)). The conduct at issue here is the warden's decision to use BOP Trust Fund profits to purchase inmate-use microwave ovens and make them available in the general population.

Once the conduct has been identified, the court must determine whether the challenged conduct involved an element of judgment or choice. Gaubert, 499 U.S. at 322. Deciding how to spend BOP Trust fund profits involved an element of choice, and deciding to permit inmate-use of microwave ovens in the general population involved an element of judgment after weighing the costs and benefits.

The final step is to determine whether the judgment at issue was a government action based on considerations of public policy, protected by the discretionary function exception. Id. at 323. "The focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325. The nature of the action taken is two-fold, deciding how to use BOP Trust Fund profits, and deciding to put microwave ovens in the general population for inmate-use. Deciding how to use government resources is subject to public policy analysis. See Merando, 517 F.3d at 172 (government

14

decision on how to use its limited financial resources in a manner that balanced visitor safety with visitor enjoyment and conservation of National Park was susceptible of policy analysis).

The decision to permit microwave oven use by inmates involved two considerations, security of the facility and providing food to inmates. (Shartle Decl., ¶¶7-14.) Weighing the interest of providing more food options to prisoners against the interest in keeping inmates and staff safe from potential misuse of the microwaves was a policy choice exercised by the administrator in managing the prison.

Due to the difficulty of prison management, courts typically provide great deference to decisions of prison administrators. See, e.g., Thornburgh v. Abbot, 490 U.S. 401, 407-08 (1989) ("the judiciary is ill equipped to deal with the difficult and delicate problems of prison management," and therefore courts must "afford[ ] considerable deference to the determinations of prison administrators"); Turner v. Safley, 482 U.S. 78, 84-85 (1987) ("running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources.")

The Zimmer Amendment does not preclude the warden's exercise of discretion in making the policy decision that was made here. The purpose of the Zimmer Amendment was not to

dictate how an administrator provides for security of inmates and staff, but to preclude the use of appropriated funds to purchase luxury items for inmates. In this instance, the warden chose to use non-appropriated funds to provide microwaves for inmate use. The purpose of the action was to allow inmates to heat foods purchased in the commissary as a supplement to the mandatory National Menu. This is the type of "difficult and delicate" problem of prison management where the judicial branch has afforded deference to prison administrators.

Plaintiff distinguishes Fields and Graham, cited by Defendant, because the courts placed weight on the fact that there was no history of attacks with heated liquids or chemicals at the prison. In Fields, the court addressed multiple negligence claims by Plaintiff, only one of which involved analysis of the discretionary function exception. The court's reliance on the lack of prior inmate attacks using boiling water related to a negligence claim that the Government failed to prevent the inmate assault on Plaintiff because the attack was not reasonably foreseeable. Fields, 2013 WL 4779229, at *5. The discretionary function exception was not raised as a defense to that claim.

In the background section of the opinion in Graham, the court noted that it was disputed whether there had been a series of inmate-on-inmate stabbings and attacks with sharp objects.

16

Graham, 2002 WL 188573, at *2. This fact, however, played no role in the court's analysis and conclusion that the discretionary function exception barred Plaintiff's FTCA claim. Id. at *4 ("[i]t may be tragically unwise for Allenwood prison officials to allow inmates access to razor blades . . . [b]ut these choices are within the discretion that Congress has committed solely to prison officials.")

The factors considered by the prison administrator in deciding to allow inmate access to an item that could be used as a weapon is not relevant to the analysis for the discretionary function exception to the FTCA. It is the fact that the prison administrator had the authority to use his or her own judgment that matters in the analysis. In Fields and Graham, as here, the prison administrator exercised his or her judgment in permitting inmate access to an item that could be used as a weapon, and the decision was protected by the discretionary function exception.

Finally, Plaintiff contends the BOP's interpretation of the Zimmer Amendment, through its Program Statements and supplements, precludes a finding that the warden exercised his discretionary judgment because the BOP has interpreted the Zimmer Amendment as an outright ban on certain items. However, in the cases cited by Plaintiff, there was a specific BOP regulation or Program Statement banning the item at issue.

For example, in Kimberlin v. U.S. Dep't of Justice, 318 F.3d 228, 230 (D.C. Cir. 2003), there was a 1995 BOP Memorandum providing guidance on the implementation of the Zimmer Amendment. The memorandum included instructions that "new institutions will not purchase electric or electronic instruments;" and "Trust fund profits . . . will not be used to purchase or repair electric or electronic equipment. Donations of these types of instruments will not be accepted." Id. Additionally, an institutional supplement to the BOP memorandum from FCI-Cumberland directed that "the only musical instrument an inmate may possess is a harmonica." Id.

In Amatel v. Reno, 156 F.3d 192, 193 (D.C. Cir. 1998), prisoners challenged a statute that banned the use of prison funds to distribute sexually explicit material to prisoners. The statute was not directly enforced, rather the BOP "promulgated regulations defining the terms of the proscription and significantly narrowing its scope." Id. The D.C. Circuit held that First Amendment scrutiny should be directed at the regulations and not the statute because all enforcement was mediated through the regulations. Id. at 194. The Court held that the regulations satisfied the demands of Turner v. Safely, 482 U.S. 78 (1987), that a prison regulation, even if it circumscribed a constitutionally protected interest, will be

upheld if it is "reasonably related to legitimate penological interests." Id.

Kimberlin and Amatel are inapposite because there was an identified prison regulation or policy statement that banned inmate possession of a particular item. Here, the parties have not cited to any BOP regulation, Program Statement, or even institutional policy statement that prohibited inmate access to microwaves. Therefore, the warden's decision to allow inmate access to microwaves was discretionary, and subject to the discretionary function exception to the FTCA.

III. CONCLUSION

For the reasons discussed above, the Court grants Defendant's motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

An appropriate Order follows.

                                  s/Renée Marie Bumb
                                  **RENÉE MARIE BUMB**
                                  **United States District Judge**

Dated: August 15, 2017